## No. 16,052.

ALBERS *v.* YOUNG, ADMINISTRATRIX ET AL.
(199 P. [2d] 890)

Decided November 8, 1948.   Rehearing denied November 29, 1948.

Mr. Max D. Melville, Mr. William W. McNeill, Mr. Edward E. Pringle, for plaintiff in error.

Mr. Harry A. Feder, Mr. Milton Morris, for defendants in error.

*En Banc.*

Mr. Justice Hays delivered the opinion of the court.

This case involves the settlement of the estate of a decedent. It appears, inter alia, from a "stipulation and agreed statement of facts" of the parties hereto: That October 2, 1946, Herman R. Kuni opened a joint bank account at the Central Bank and Trust Company of Denver in the name of himself and Louise Albers, his daughter, who is plaintiff in error in this proceeding; that only two deposits were made and no withdrawals made therefrom; that he died intestate September 3, 1947; "that all deposits in said account with the exception of the interest entries, were made solely from the funds of the decedent and by the decedent; * * * that Louise Albers made no deposits to said account * * *." It appears from the record that there remained in the account at the time of Kuni's death, the sum of $2,626.17. The question posed for our determination, is whether or not the joint bank account constituted an advancement to the daughter, and that by reason thereof the funds therein must be brought into hotchpot and distributed to the heirs of decedent as intestate property.

Plaintiff in error daughter contends that the creation of the joint account was not an advancement within the meaning of the applicable statutes, and therefore is no part of the assets of the estate. After a hearing, the trial court held that under the facts, an advancement was created.

Section 45, chapter 18, '35 C.S.A. provides: "When a bank deposit in any bank or trust company transacting

business in this state has been made, or shall hereafter be made, in the names of two or more persons payable to them or to any of them, such deposit or any part thereof or any interest or dividend thereon may be paid to any one of said persons whether the other or others be living or not, and the receipt or acquittance of the person so paid shall be a valid and sufficient discharge to the paying bank from all said persons, their heirs, executors, administrators and assigns; and such deposit shall be deemed to be owned by said persons in joint tenancy with the right of survivorship; provided, however, that in the event any bank has actual knowledge that any one or more of said depositors is dead, nothing in this section contained shall be deemed to except such payment from the operation of section 12 of chapter 136 of the session laws of 1913."

A determination of the question here presented requires an examination and application of the following statutes: Section 5, chapter 176, '35 C.S.A. provides: "Where any of the children of the intestate shall have received in his lifetime any real or personal estate, by way of advancement, and the other heirs desire it to be charged to him, the county judge shall cite the parties to appear before him, shall hear the proof upon the subject, and shall determine the amount of such advancement or advancements to be thus charged." Section 223, chapter 176, '35 C.S.A., provides: "When any heir of an intestate has received money. goods, chattels or real estate, if the amount so received shall be charged to such heir by said intestate, the same shall be taken into computation in making distribution of the estate, upon being brought into hotchpot; provided, that an heir who has received from the intestate more than his share shall in no case be required to refund."

In 1 American Jurisprudence, page 715, section 3, advancement is defined as follows: "In its strict technical sense an advancement is a perfect and irrevocable gift, not required by law, made by a parent, during his

lifetime, to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate."

The above definition is further treated in sections 22 and 23, id., as follows:

Section 22. "The definition of an advancement embraces the idea that the donor has irrevocably parted with his title in the subject matter, and that complete title has passed to and become vested in the donee."

Section 23. "It is necessary to the existence of an advancement that the passing of the complete title and the vesting of the beneficial interest shall take place during the lifetime of the donor, as the purpose of an advancement is to allow the heir or distributee the present use and enjoyment of that which under other circumstances he would not secure until the donor's death. Hence, where no estate that can be alienated is given to a donee, no advancement can be said to have been made."

The questions here presented were fully discussed, and the above definition approved by us, in *Page .v. Elwell,* 81 Colo. 73, 81, 253 Pac. 1059. Defendants in error rely upon the following excerpt from the opinion in that case for support of their contention that the establishment of the joint account here in question constituted an advancement. "In the absence of any evidence indicating a contrary intent, it is presumed that a father intended to treat his children all alike; hence, where all that is known is that money was given, a presumption arises that a *gift* of a substantial amòunt to a child was intended as an advancement, to be taken into account upon the final distribution of the father's estate, if he died intestate."

■■ It is argued that since there is no evidence in the record showing the intention of decedent, other than the fact of the creation of the joint account, the· presumption that an advancement was intended is conclusive. This argument is based upon the erroneous as-

sumption that the establishment of a joint bank account with the right of survivorship, ipso facto, constitutes a *gift* inter vivos. This assumption is contrary to our holding in *Page v. Elwell, supra,* and to the definition of advancement therein approved by us, which provides that a gift is not an advancement unless it is "perfect and irrevocable." It is likewise in conflict with our pronouncements in *Johnson v. Hilliard,* 113 Colo. 548, 160 P. (2d) 386, and *Falbo v. United States National Bank,* 116 Colo. 508, 181 P. (2d) 1020, wherein the essential elements of gifts, inter vivos, are set forth. In *Johnson v. Hilliard, supra,* we said: "The *surrender of the dominion of control,* in order to effect a valid gift inter vivos, includes the *parting* of *possession* and *relinquishment* of all *control* both present and future of the property to the extent that it is beyond the power of the donor to recall it. The *surrender* of *control* and *dominion* must be such that if the donor resumes control of the property without the consent of the donee, he will become a *trespasser* and *liable* to the *donee* as such. 38 C.J.S., p. 799, §20; 24 Am. Jur., p. 741, §22." (Italics supplied)

There is nothing in the stipulation of the parties, statute or record to indicate an intention on the part of Mr. Kuni to make a "perfect and irrevocable gift"; that decedent "irrevocably parted with his title"; that there was a "passing of the complete title"; or that there had been a complete "parting of possesssion and surrender by the donor of all control and dominion" of the funds. On the contrary, decedent, by virtue of the statute, retained control of, and dominion over, the account, including the absolute right to withdraw all or any part of the funds at anytime. It follows that the trial court erred in finding that an advancement was created.

The judgment is reversed and the cause remanded for further proceedings in harmony herewith.